[Cite as *In re A.E.*, 2025-Ohio-1466.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.E., ET AL.                          :

                                            :          No. 114605
Minor Children                              :

[Appeal by S.E., Mother]                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 24, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-22908791, AD-22908792, AD-22908793,
AD-22908795, and AD-22908796

---

### *Appearances:*

Cullen Sweeney, Cuyahoga County Public Defender, and
Britta Barthol, Assistant Public Defender, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* Cuyahoga County Division of
Children and Family Services.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant S.E. ("mother") appeals from the judgment entries of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that awarded permanent custody of her children Ar.E., D.B., Am.E., H.E., and D.E. ("the children") to the Cuyahoga County Division of Children and Family Services

("CCDCFS" or "the agency") and terminated all parental rights.[1]  After a careful review of the record, we affirm the juvenile court's decisions.

{¶ 2}  On August 31, 2022, CCDCFS filed a complaint alleging the children to be abused, neglected, and dependent and requesting temporary custody to the agency.[2]  The children were committed to the predispositional temporary custody of CCDCFS after a hearing held September 1, 2022.  Mother stipulated to allegations of an amended complaint, which included allegations, among others, that mother's child T.D., who was then four years old, had been found wandering outside by himself and police intervention was required; the children were found at home without adult supervision; mother did not have safe or appropriate housing for the children; and one of mother's children previously had been adjudicated neglected.  The amended complaint also included allegations as to the fathers/alleged fathers in the matter.

{¶ 3}  In January 2023, the juvenile court adjudicated the children as abused, neglected, and dependent and committed the children to the temporary custody of CCDCFS.  Case-plan services were provided, and the juvenile court included reasonable-efforts findings in its entries.

{¶ 4}  In the course of the matter, semiannual-review reports and guardian ad litem reports were filed, which indicated significant concerns.  Although mother

_____

[1] A separate appeal was filed by T.B., who is the father of three of the children.  We only address mother's appeal herein.

[2] The complaint included a sixth child, T.D., whose case was resolved and is not at issue in this appeal.

engaged in substance-abuse services, completed parenting classes, and had housing, she had not successfully completed or complied with all recommended services. Further, mother had not submitted for requested drug screenings from November 2022 until February 2024, had displayed inappropriate behaviors toward the children, and had pled guilty to charges of child endangering, among other concerns. Mother's visitation with the children was suspended in April 2023 due to mother's inappropriate behaviors with the children.

{¶ 5} In August 2023, CCDCFS filed a motion to modify temporary custody to permanent custody. In October 2023, following a preliminary hearing, the juvenile court ordered mother to submit to random urine screens and to complete a mental-health evaluation before supervised visits with the children could be approved.

{¶ 6} Other pretrial proceedings occurred in the matter, and various pleadings were filed. Mother filed motions to reestablish visitation, and she also sought legal custody of the children. The guardian ad litem ("GAL") filed a report recommending permanent custody to CCDCFS. The juvenile court conducted an in camera interview with the three oldest children.

{¶ 7} Trial was held on September 20, 2024. The juvenile court heard testimony from multiple witnesses and accepted evidence. There was testimony from both the visitation coach and the CCDCFS worker that showed although mother completed a parenting program, she exhibited behaviors demonstrating that she had not benefited therefrom. The CCDCFS worker testified to mother being

"very aggressive" and "very inappropriate" in speaking with the children, and examples were given. Mother became volatile with both the visitation coach and the social worker, and she would cancel visits. Visits were eventually stopped due to mother's inappropriate behavior. Mother completed a second parenting program as a condition of her probation for child endangerment, but concerns remained.

{¶ 8} The testimony also showed that mother did not engage in all recommended services. She was unsuccessfully discharged from a drug-treatment program in July 2024. Mother began another drug-treatment program and engaged in some mental-health services by the time of trial, but she had not completed those services. After multiple referrals for a mental-health evaluation, mother finally completed an evaluation in June 2024. The psychologist who performed the assessment opined that mother "does not take responsibility for her actions" and expressed concerns about mother's ability to successfully remedy situations that caused the removal of her children. There were also concerns with mother's anger management. Although mother had obtained appropriate housing, she reported that she was being downsized to a smaller apartment. She had multiple jobs and periods where she was not employed, and there were concerns about her ability to provide for the children. The agency did not believe mother had satisfied her case-plan components such that reunification could occur.

{¶ 9} The father of H.E. and D.E. had expressed multiple times that he was not able to care for his children and was satisfied with their current placement situation. There were valid concerns regarding the father of Ar.E., D.B., and Am.E.

Two of the children, H.E. and D.E., were placed together in a paternal aunt's home. The other three children were placed together in a foster home. All of the children were receiving appropriate care, and the children's needs and/or specialized needs were being met in their respective placements. The parents did not inquire about the specialized medical care required by two of the children, nor did the parents inquire about the academic progress of any of their children. Other testimony and evidence were provided.

{¶ 10} On October 31, 2024, the juvenile court journalized a judgment entry in each child's case. In its decisions, the juvenile court made the requisite statutory findings and granted CCDCFS's motion to modify temporary custody to permanent custody. The juvenile court also denied the pending motions for visitation and for legal custody. The juvenile court committed each of the children to the permanent custody of the agency and terminated all parental rights. Mother's appeal is now before us.

{¶ 11} Under her first assignment of error, mother claims the juvenile court's decisions granting permanent custody of the minor children to CCDCFS are against the manifest weight of the evidence. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 12} Although it is well established that the right to parent one's child is a fundamental right, the government has broad authority to intervene to protect a child's health or safety. *In re C.F.*, 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000); R.C. 2151.01. Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 2014-Ohio-4558, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 13} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.,* at ¶ 7, quoting R.C. 2151.414(B)(1). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 14} Here, in each child's case, the juvenile court determined by clear and convincing evidence that the factor under R.C. 2151.414(B)(1)(a) applied. The juvenile court included a finding pursuant to R.C. 2151.414(E) that "the child cannot be placed with one of the child's parents within a reasonable time or should not be

placed with either parent" and found multiple factors under R.C. 2151.414(E) applied, including the conditions under R.C. 2151.414(E)(1), (2), (4), (10), and (14). Although mother challenges each of those factors, only one of the factors outlined in R.C. 2151.414(E) is required to be met in order to properly find that a child cannot or should not be placed with a parent. *In re L.V.*, 2024-Ohio-5917, ¶ 53 (8th Dist.), citing *In re Ky.D.*, 2024-Ohio-3198, ¶ 36 (8th Dist.). We need not address each factor herein. It is apparent that as to mother, at a minimum, the failure-to-remedy condition under R.C. 2151.414(E)(1) was clearly supported by the record. Thus, R.C. 2151.414(B)(1)(a) was satisfied.

{¶ 15} Next, in each child's case, the juvenile court determined "by clear and convincing evidence" that "it is in the best interest of the child to be placed in the Permanent Custody of [CCDCFS]." "[T]he best interests of the child are paramount in any custody case," and courts are to liberally interpret the statutes under R.C. Ch. 2151 "to provide for the care and protection of the child . . . ." *In re A.B.*, 2006-Ohio-4359, ¶ 32, citing R.C. 2151.01(A). R.C. 2151.414(D) sets forth the factors a juvenile court is to consider in determining the best interest of a child in a permanent-custody hearing.

{¶ 16} In each child's case herein, the juvenile court considered all relevant best-interest factors, including the enumerated factors under R.C. 2151.414(D)(1)(a)-(e), which are specifically set forth in the court's decisions. Insofar as mother points to testimony favorable to her, the juvenile court properly

weighed all relevant factors in rendering its disposition.[3] Moreover, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Additionally, the juvenile court found all the factors under R.C. 2151.414(D)(2) applied.[4] R.C. 2151.414(D)(2) instructs that if all of the factors thereunder apply, "permanent custody is in the best interest of the child, and the court *shall* commit the child to the permanent custody" of the agency. (Emphasis added.) Our review reflects that the juvenile court considered the relevant statutory factors and properly determined that an award of permanent custody to the agency is in the children's best interest. We find the juvenile court's determinations under both R.C. 2151.414(D)(1) and (2) are supported by the record.

{¶ 17} Although mother maintains she completed parenting classes, is engaged in counseling, and has housing, the testimony and evidence in the matter showed that mother had not demonstrated a sufficient benefit from the services or changed her behavior so as to permit reunification with the children. The record shows that mother displayed very inappropriate behavior in front of the children, her visitation was suspended, she did not take accountability for her actions, she did not successfully complete all recommended services, that there were concerns for her ability to provide for the children, she did not inquire about the children's

---

[3] Further, "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors," and "[c]onsideration is all the statute requires." *In re A.M.*, 2020-Ohio-5102, ¶ 31.

[4] The R.C. 2151.414(D)(2) factors are set forth in the juvenile court's judgment entries.

medical needs or academic progress, and that other significant concerns remained. The caseworker did not believe it was in the children's best interest to be returned to their respective parents and testified that the children were doing well in the foster home and their needs were being met. The GAL for the children recommended permanent custody to CCDCFS, and the juvenile court conducted an in camera interview with the three oldest children. The record demonstrates that the children were in need of a safe and stable home environment. Additionally, the record supports the juvenile court's determinations that at the time of trial, the children could not be placed with their respective parents within a reasonable time, they had been in the custody of CCDCFS for over two years and no longer qualified for temporary custody, they did not meet the requirements for a planned permanent living arrangement, and no relative or other interested person had been identified for legal custody. Other evidence was presented that this court has reviewed.

{¶ 18} After carefully reviewing the entire record, we do not find the juvenile court clearly lost its way or committed a manifest miscarriage of justice by terminating parental rights and committing the children to the permanent custody of CCDCFS. We are not persuaded by mother's arguments otherwise. We conclude that in each child's case, the juvenile court's judgment is not against the manifest weight of the evidence. Accordingly, mother's first assignment of error is overruled.

{¶ 19} Under her second assignment of error, mother claims the juvenile court erred by denying her motion for legal custody. However, R.C. 2151.414 "requires a weighing of all the relevant factors" and the court to "find the best option

for the child . . . ." *In re Schaefer*, 2006-Ohio-5513, at ¶ 64.  If permanent custody is in the best interest of the child, legal custody necessarily is not.  *In re D.E.*, 2025-Ohio-654, ¶ 15 (8th Dist.), citing *In re Y.F.*, 2024-Ohio-5605, ¶ 34 (8th Dist.).  Given the record in this matter and the concerns that were raised, as well as the juvenile court's proper determination that permanent custody to CCDCFS was in the children's best interest, we find no error in the juvenile court's denial of mother's motion for legal custody.  Accordingly, the second assignment of error is overruled.

{¶ 20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHAEL JOHN RYAN, P.J., and
ANITA LASTER MAYS, J., CONCUR