[Cite as *In re N.M.*, 2025-Ohio-2689.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE N.M.                                       :
                                                 :                 No. 114889
A Minor Child                                    :
                                                 :
[Appeal by L.M., Mother]                         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 31, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-23903934

---

### *Appearances:*

Patrick S. Lavelle, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-mother L.M. ("mother") appeals the juvenile court's decision awarding permanent custody of her child N.M. ("the child") to the Cuyahoga County Division and Family Services ("CCDCFS" or "the agency"). For the reasons that follow, we affirm.

# I. Procedural History

{¶ 2} In March 2023, CCDCFS filed a complaint alleging neglect and requesting temporary custody of the child. The complaint indicated that mother suffered from substance-use disorders and had been inconsistent with treatment, lacked housing, and could not provide for the child. After a hearing, the court adjudicated the child dependent following an amendment to the complaint and mother's stipulation and a case plan was approved.

{¶ 3} In August 2023, the child was placed in the agency's temporary custody, and in February 2024, the agency filed a motion to modify temporary custody to permanent custody. In the motion, the agency submitted an affidavit indicating that mother had not obtained stable and appropriate housing and, despite engagement in substance use treatment services, mother continued to test positive for cocaine.

{¶ 4} In April 2024, M.M., the child's maternal grandmother ("Grandmother") filed a motion for legal custody of the child. In August 2024, the juvenile court denied Grandmother's motion but granted an extension of time to CCDCFS for temporary custody of the child. In February 2025, mother filed her own motion requesting legal custody to Grandmother.

{¶ 5} The trial on CCDCFS's motion to modify temporary custody to permanent custody and mother's motion for Grandmother's legal custody occurred in February 2025. After the hearing, the juvenile court denied mother's motion for custody to Grandmother and granted the agency's motion to modify temporary

custody to permanent custody, terminating mother's parental rights. Mother now appeals, assigning three errors for our review, as follows:

> I. The trial court's award of permanent custody to [CC]DCFS, despite [CC]DCFS's failure to make reasonable efforts to eliminate the continued removal of the children from their home and to return the children to their home, violated state law and appellant's right to due process of the law as guaranteed by the fourteenth amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution.
>
> II. The trial court's decision to award permanent custody to [CC]DCFS was against the manifest weight of the evidence.
>
> III. The trial court's failure to discuss the wishes of the children and their relationship with L.M. Mother in determining the best interests of the children constitutes reversible error.

## II. Hearing Testimony

{¶ 6} At trial, CCDCFS presented Courtney Herrod ("Herrod") and Carmen Hardwick ("Hardwick") as witnesses.

### A. Herrod's Testimony

{¶ 7} Herrod testified that she is a child protection specialist in the extended services department of the agency. She testified that the case was opened because mother struggled with sobriety and housing and the child was placed in a safety plan with Grandmother. The agency developed a case plan for mother that included services for parenting, mental health, substance abuse, housing, and basic needs. Overall, Herrod felt that mother had not met the goals of her case plan.

{¶ 8} Mother completed parenting and mental health services at Caritas Treatment and Wellness Center ("Caritas"). Mother was allowed weekly visitation

with the child for two hours, which Herrod testified positively about, stating that mother was "relatively consistent" with the visits and adequately communicated when she was unable to make a visit. (Tr. 23.) Herrod acknowledged that mother and the child are bonded and enjoy their time together and conceded that there are few concerns about mother's interactions with the child.

{¶ 9} Mother had been experiencing homelessness when this case was initiated and obtained housing in November 2024. According to Herrod, mother shares an apartment with her sister; it has two bedrooms, a living room, and a small kitchenette.

{¶ 10} Regarding basic needs, Herrod testified that the agency remained concerned about mother's ability to provide for the child, citing two pending evictions in the past six months, one of which was unresolved at the time of trial.

{¶ 11} Mother was referred to several agencies for assistance with substance abuse. According to Herrod, mother was uncomfortable with and harbored disdain for the staff at her first three substance-abuse placements and did not complete the programs. (Tr. 14.) She returned to her second placement and began an intensive outpatient program ("IOP") in September 2024, but "unfortunately, mother continued out [sic] with the same pattern of either just finding some discomfort with staff or just really falling off and being inconsistent with those services," leading to her discharge from the IOP in December 2024. (Tr. 15.) At the time of trial, mother was just restarting her substance-abuse treatment and had not fully or thoroughly completed any substance-abuse programs. Herrod testified that since December

2024, mother had taken at least two drug screens that came back negative. Herrod noted, however, that mother sometimes refused drug screens in her IOP and had been inconsistent with screenings, missing at least half of her scheduled screenings, which her IOP considered positive tests.

{¶ 12} Herrod testified that the agency had concerns about Grandmother's relationship with mother. While the child was placed with Grandmother, mother would impose and stay at the home "for weeks on end" despite "ongoing conflict" between the two of them to which the child was exposed. (Tr. 24.) Herrod felt that Grandmother was unable to establish boundaries with mother that did not improve even after agency involvement. After removal from Grandmother's home, the child was placed with a maternal aunt that purportedly did not work out because Grandmother pushed boundaries with maternal aunt. The child was then placed with "another maternal aunt, cousin of some sort," which was the child's placement at the time of trial. (Tr. 27.) In that placement, the child received early childhood mental-health services and participated in a positive education program and her needs were otherwise met.

### B. Hardwick's Testimony

{¶ 13} Hardwick testified that she is a substance-abuse counselor at New Visions Unlimited, one of mother's placements for substance-abuse services. Hardwick testified that she had known mother since approximately September 2024 when mother presented to New Visions Unlimited for concerns with substance abuse. Mother's IOP required her to attend group therapy for three days a week for

12 weeks and upon completion of this 12-week program, report to virtual group therapy twice a week, submit to urine drug tests once a week, and meet with Hardwick. Hardwick described mother's participation in the program as "fair," noting that "there was a period where she kind of slowed up with her attendance for group, and then she was a little bit like inconsistent with drug screenings." (Tr. 43.) Since reengaging with the services, Hardwick described mother's engagement as "good," elaborating that she has missed some drug screenings but has not missed any of the group sessions. (Tr. 47.) Hardwick testified, however, that a missed screening is a presumed positive and mother had just missed a screening "last Friday." (Tr. 53.) Hardwick was unable to provide a sobriety date for mother.

## C. Grandmother's Testimony

{¶ 14} Mother's sole witness, Grandmother, testified that she had been close to the child since the child's birth but that her relationship with mother was "different than it was. It's better." (Tr. 60.) She elaborated that their relationship was difficult when mother had active issues with drugs and alcohol. Grandmother assumed that she lost temporary custody of the child because mother was imposing on her and staying in her home and she was unable to control mother. She testified regarding the processes she took in trying to remove mother from her home, which included involving the local police and attempting to obtain a restraining order — neither were successful. Grandmother said that mother eventually left on her own after the child was placed with a different relative.

**D. Guardian Ad Litem Testimony**

{¶ 15} The child's guardian ad litem ("GAL") testified that she had observed the child in mother's care, Grandmother's care, and in her current placement. Regarding mother, the GAL stated that she had not seen mother's new home but did acknowledge that Grandmother's home was suitable. The GAL felt that mother and the child have a strong bond but that the child was fearful of Grandmother's home because of the fighting between Grandmother and mother. Ultimately, the GAL felt that the child's best interests would be served in the permanent custody of the agency.

### III. Law and Analysis

{¶ 16} In her first assignment of error, mother contests the trial court's finding that reasonable efforts were made to prevent removal or return the child safely home pursuant to R.C. 2151.419. She concedes that this district's precedent does not require such findings on motions to modify temporary custody to permanent custody but nonetheless invites this court to require such findings. We have previously declined such an invitation, and we continue to do so here. *In re T.C.*, 2024-Ohio-6131, ¶ 49 (8th Dist.).

{¶ 17} Nonetheless, the record establishes that the trial court made these findings and that CCDCFS made reasonable efforts pursuant to R.C. 2151.419. The trial court affirmatively found that CCDCFS made reasonable efforts pursuant to R.C. 2151.419 throughout the pendency of the case. *See* Journal Entries dated June 29, 2023; August 3, 2023; April 25, 2024; August 22, 2024; February 25, 2025.

Further, the record demonstrates that CCDCFS created a case plan for mother that she partially engaged in. The agency offered various referrals and services to allow mother to take advantage of the case plan, allowed for visitation with the child, and provided the necessary resources for mother to complete her case plan. The testimony received at trial indicates that mother was mostly compliant with the case plan, but did not thoroughly complete a substance-abuse program and did not have a sobriety date at the time of trial. Further, even though mother had obtained housing in November 2024, at the time of trial, she was facing eviction and it was unclear whether mother would be able to provide housing and basic needs for the child, despite completing these programs to the satisfaction of the agency. Accordingly, mother's first assignment of error is overruled.

{¶ 18} In her second assignment of error, mother contends that awarding permanent custody of the child to CCDCFS was against the manifest weight of the evidence. In her third assignment of error, mother contests the trial court's findings that permanent custody to the agency was in the child's best interest. We discuss these assignments of error together for ease of discussion.

{¶ 19} "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.). The Ohio Supreme Court clarified the manifest-review standard in parental rights cases in *In re Z.C.*, 2023-Ohio-4703, holding that when reviewing a court's award of permanent custody and termination of parental rights, "the proper

appellate standards of review to apply . . . are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties" rather than the abuse-of-discretion standard. *Id.* at ¶ 18. Mother's second assignment of error challenges the termination of her parental rights under a manifest-weight standard.

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*In re Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 20} CCDCFS sought custody in this matter pursuant to R.C. 2151.413. Under R.C. 2151.413, CCDCFS first obtained temporary custody of the children, then filed a motion for permanent custody. R.C. 2151.414(B)(1) provides a two-part test for courts to apply when determining whether to grant a motion for permanent custody. A juvenile court may grant a child services agency's motion for permanent custody if it determines, by clear and convincing evidence, that (1) permanent custody is in the best interest of the child and (2) any of the factors in R.C. 2151.414(B)(1)(a)-(e) apply. "Clear and convincing evidence" is that "measure or degree of proof" that "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Mother disputes both prongs of this analysis.

{¶ 21} Regarding the first prong, whether permanent custody is in the best interests of the child, R.C. 2151.414(D)(1) instructs that the court "shall consider all relevant factors, including, but not limited to, the following:"

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period[;]
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 22} The trial court made the following findings regarding the best interest of the child:

> Upon considering the interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents; the wishes of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and, the report of the Guardian ad Litem, the Court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the child[.]

{¶ 23} Mother's third assignment of error specifically contends that "the trial court did not discuss the 'interaction and interrelationship' between her and the child, nor did it even mention the child's wishes" and that failure to discuss these points warrants reversal. We disagree.

{¶ 24} Initially, we note that although a trial court is required to consider each of the R.C. 2151.414(D)(1) factors in making permanent-custody determinations, R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). *In re A.M.*, 2020-Ohio-5102, ¶ 31. "Consideration is all the statute requires." *Id.* The trial court's journal entry plainly states that it considered the interaction and interrelationship between mother and the child, as well as the wishes of the child. These statements in the journal entry satisfy R.C. 2151.414(D)(1).

{¶ 25} The record nonetheless contains clear and convincing evidence supporting that permanent custody to the agency was in the best interest of the child. While it is clear that mother and the child are bonded and have a good relationship, it is unclear that mother is sober from drugs and able to provide for the basic needs of the child, including demonstrating that she has the financial means to provide for the child's housing and basic needs. Indeed, the hearing transcript reveals that mother had a pending eviction action and there was no testimony regarding mother's employment or income. Regarding the child's preferences, the GAL indicated that when discussing mother and Grandmother, the child "got quiet,

didn't really want to discuss it. She was sad. She has maintained since she has been in custody that she doesn't want to return to [Grandmother's] home," and ultimately, the GAL opined that permanent custody to the agency was in the child's best interests. (Tr. 81-82.)

{¶ 26} Regarding the second prong of the analysis that mother challenges in her second assignment of error, the trial court found that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, pursuant to R.C. 2151.414(B)(1)(a).[1] Under R.C. 2151.414(E), "[i]f the court determines, by clear and convincing evidence . . . that one or more of [the R.C. 2151.414(E) factors] exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]"

{¶ 27} Here, the trial court made findings suggesting that R.C. 2151.414(E)(1), (2), (4), and (9) were probative. On appeal, mother only challenges the trial court's finding pursuant to R.C. 2151.414(E)(1) and does not challenge the findings pursuant to (E)(2), (4), and (9). Although we note that only one (E) factor is required for the trial court to find that the child cannot or should not be placed with either parent pursuant to R.C. 2151.414(B)(1), we nonetheless review mother's challenge to the trial court's (E)(1) finding. R.C. 2151.414(E)(1)

---

[1] The trial court's additional finding that the child had been in agency custody for 12 or more months of a 22-month period is not supported by the record. Neither party has challenged this finding, but because R.C. 2151.414(B)(1) only requires satisfaction of one of the factors and the trial court also found that the child cannot or should not be placed with either parent, this finding was unnecessary.

pertains to whether the parent remedied the problems initially causing the child's removal and the parent's continuous and repeated failure to substantially remedy the conditions causing the child to be placed outside of the home. Mother maintains that CCDCFS did not provide reasonable case planning and assistance to her, referring to her first assignment of error. She also argues that she did not continuously and repeatedly fail to substantially remedy the conditions leading to the child's removal. She contends that

> [she] participated and completed a substantial part of her case plan including parenting and mental health requirements and though [she] concedes that substance abuse services were not completed, she maintains that she was actively in treatment at the time of trial.

{¶ 28} We find that clear and convincing evidence in the record supports the juvenile court's determination that mother continuously and repeatedly failed to substantially remedy the conditions leading to the child's removal, particularly regarding the substance-abuse treatment. While we recognize that mother was in treatment at the time of trial, it was because she had to restart treatment after termination from the program. Additionally, mother had been inconsistent with drug testing and the agency was not able to verify whether she was sober at the time of trial.

{¶ 29} Based on the foregoing discussion and the record before us, we cannot conclude that the trial court's determination regarding the second prong was against the manifest weight of the evidence. Mother's second and third assignments of error are overruled.

**{¶ 30}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR