[Cite as *In re E.W.*, 2025-Ohio-5052.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE E.W.                                      :

                                                :         No. 115323

A Minor Child                                   :

                                                :

[Appeal by Mother, M.W.]                         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 6, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD24901638

---

### *Appearances:*

Patrick S. Lavelle, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

WILLIAM A. KLATT, J.:

{¶ 1} Appellant M.W. ("Mother") appeals from the juvenile court's July 3, 2025 judgment entry that terminated her parental rights and granted permanent custody of her minor child, E.W. ("child") (d.o.b. 2/16/2024), to the Cuyahoga County Division of Children and Family Services ("the agency" or "CCDCFS"). After

reviewing the facts of the case and pertinent law, we affirm the juvenile court's judgment.

## I. Factual and Procedural History

{¶ 2}   Mother tested positive for illegal drugs while pregnant with E.W., and Mother gave birth to E.W. on February 16, 2024. On February 20, 2024, the agency filed a complaint for dependency and permanent custody to CCDCFS and a motion for predispositional temporary custody. The complaint alleged that Mother was unable to provide safe and appropriate care for the child because of concerns of substance abuse and mental-health issues and lack of necessary judgment and decision-making skills. On that same day, the juvenile court granted the agency emergency temporary custody of E.W.

{¶ 3}   At the time of E.W.'s birth, the agency had an existing case plan for Mother and two of her sons — Ju.W. (d.o.b. 9/15/2008) and Ja.W. (d.o.b. 8/22/2009) — who had previously been adjudicated neglected and/or dependent.[1] *See* Cuyahoga J.C. Nos. AD21907668 and AD23902856. On March 21, 2024, the agency filed with the court an updated case plan that included E.W. The case plan noted Mother's history of substance abuse and mental-health concerns and indicated Mother was to complete a drug and alcohol assessment and submit random drug screens; complete a psychological evaluation; and attend a parenting

---

[1] Mother's third son, L.W. (d.o.b. 10/16/2019), was in the temporary custody of his Father and was not included in the case plan. *See* Cuyahoga J.C. No. AD23902857.

program. The agency placed E.W. in foster care and approved weekly supervised visitation with Mother. E.W. remained in foster care for the duration of her case.

{¶ 4} At the time of E.W.'s birth, Mother had a pending criminal case. On March 28, 2024, Mother was sentenced in that case to an aggregate prison term of 21 months on charges of attempted burglary, assault, criminal damaging, grand theft, attempted having weapons while under disability, menacing by stalking, and swatting. Mother was remanded to prison where she remained during the pendency of the instant case.

{¶ 5} On May 24, 2024, the juvenile court conducted a hearing on the agency's amended complaint for dependency and temporary custody of E.W. Mother admitted to the allegations of the amended complaint including that she needed to maintain her sobriety and mental health to provide safe and appropriate care for E.W. and engage in recommended substance-abuse services. Mother admitted that her three older children had been adjudicated neglected and/or dependent because of, in part, her lack of appropriate judgment and decision-making skills and were in the agency's temporary legal custody. Mother further admitted there was a pending motion requesting legal custody of L.W. to his Father and pending motions seeking permanent custody of Ju.W. and Ja.W. to the agency because of Mother's failure to alleviate the concerns that led to the initial removal of the children. Those concerns included substance abuse, mental health, and parenting. The juvenile court journalized an entry on July 15, 2024, that adjudicated E.W. dependent and committed her to the agency's temporary custody.

{¶ 6} On February 4, 2025, the agency filed a motion for permanent custody of E.W., and on February 11, 2025, the child's guardian ad litem ("GAL") submitted a report that recommended permanent custody of E.W. to the agency.

{¶ 7} A February 28, 2015 semiannual review ("SAR") noted Mother was on a waitlist for alcohol or drug services in prison, but her progress with such services was unknown. The SAR also noted E.W. had developed a strong and healthy bond with her foster parents. The SAR indicated the case worker attempted to obtain monthly updates from Mother's case manager at the prison, but the case manager had not returned his phone calls.

{¶ 8} On June 24, 2025, the juvenile court conducted trial on the agency's motion for permanent custody. Mother, the agency case worker, and E.W.'s GAL participated in the hearing.

**Mother's Trial Testimony**

{¶ 9} Mother conceded she had no relationship with E.W. Since the agency was granted temporary custody four days after E.W.'s birth, Mother had seen the child only once during a video telephone call between Mother and Ja.W.[2] Mother further testified that while incarcerated, she had unsuccessfully attempted to arrange virtual visitation with E.W. It was Mother's understanding that the agency needed to complete paperwork to facilitate such visitations. Mother stated that her case worker had not attempted to contact her during her incarceration.

---

[2] E.W. and Ja.W.'s foster parents facilitated visits between the siblings. E.W. coincidentally visited Ja.W. on a day he had a prearranged call with Mother.

{¶ 10} Mother testified that during her incarceration she completed classes on parenting, domestic violence, and substance abuse. Mother stated she had been unable to receive mental-health services because she missed her scheduled appointments when she was transported from prison for court appearances in the instant case. Mother testified that she had been sober for one and one-half years during her incarceration. Mother further testified drugs were accessible in prison, she was subject to monthly drug screens in prison, and those screens had all been negative. Mother stated she currently attends AA classes, participates in peer support groups, practices mindfulness, and is learning how to "control herself."

{¶ 11} Mother agreed that she had completed recommended substance-abuse programs in the past and had still experienced relapses including positive drug testing when she was pregnant with E.W. To avoid relapse upon release from prison, Mother stated she would continue to attend AA meetings and get a sponsor and seek assistance from the Black Mental Health Corporation.

{¶ 12} Mother also testified that upon her release from prison, she intended to participate in Edwin's culinary arts program and the program would provide housing for her and E.W. However, Mother's release date was scheduled for November 21, 2025, and if she was not released in time for Edwin's start date of November 10, 2025, she would be placed on the program's waitlist.

**Case Worker's Trial Testimony**

{¶ 13} The case worker stated the agency's concerns for Mother — substance abuse, mental health, and parenting — were the same during the prior cases with

her three sons and the instant case with E.W. The case worker testified that the agency referred Mother for all relevant services prior to her incarceration.

{¶ 14} The case worker testified that Mother engaged in some classes during her incarceration — and received certificates of completion — but Mother did not complete a required parenting class because of a scheduling conflict.

{¶ 15} The case worker stated that Mother had completed substance abuse services several times in the past without long-lasting change. Thus, the case worker explained that the agency would need to document Mother's maintained sobriety while living in her community with free access to the abused substances rather than rely on her sobriety during her incarceration. Additionally, upon release Mother would need to have sustained housing, complete parenting classes, and participate in mental-health services.

{¶ 16} In regard to E.W., the case worker stated the child was well-adjusted and bonded with her foster parents. The agency considered three relatives with whom they could place E.W., but it declined two relatives who did not pass the necessary background check. The third relative lacked the financial means to foster E.W. but could be considered in the future.

{¶ 17} According to the case worker, virtual visitation between Mother and E.W. could occur upon the agency's submission of a form. The case worker stated he had not completed the form because he erroneously thought Mother engaged in virtual visits simultaneously with E.W. and her son.

{¶ 18} The case worker testified that he did not believe Mother could provide a safe, stable, and permanent home.

**GAL's Trial Testimony**

{¶ 19} The GAL testified that she learned during the custody trial that Mother completed various courses during her incarceration and that Mother planned to participate in Edwin's culinary arts program upon her release. While the GAL commended Mother on her hard work, she recommended the court grant permanent custody to the agency. The GAL emphasized the absence of any relationship between Mother and child and Mother's chronic substance abuse that had led to the removal of her three older children. The GAL voiced concern that if Mother missed the start date for the Edwin's program, both housing and employment would be adversely impacted. The GAL stated that Mother had not addressed her mental-health concerns. Further, the GAL testified that Mother's incarceration prevented Mother from demonstrating her ability to maintain employment, housing, and sobriety while living in the community.

**Grant of Permanent Custody**

{¶ 20} In a journal entry dated June 24, 2025, the juvenile court granted the agency's motion for permanent custody. The juvenile court found, by clear and convincing evidence, that a grant of permanent custody to the agency was in E.W.'s best interests. The juvenile court also determined that pursuant to R.C. 2151.414(E), there was evidence that the child could not be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

{¶ 21} On July 10, 2025, Mother filed a timely appeal, presenting two assignments of error for our review:

> Assignment of Error I:  The trial court's award of permanent custody to [CCDCFS], despite [CCDCFS]'s failure to make reasonable efforts to eliminate the continued removal of the child from her home and to return the child to her home, violated state law and appellant's right to due process of the law as guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution.

> Assignment of Error II:  The trial court's decision to award permanent custody to [CCDCFS] was against the manifest weight of the evidence.

## II. Legal Analysis

## A. Reasonable Efforts

{¶ 22} In her first assignment of error, Mother argues that the juvenile court failed to make findings of fact related to the agency's reasonable efforts as required under R.C. 2151.419, and that the agency failed to develop and implement sufficient case-planning services for Mother.

{¶ 23} The Ohio Supreme Court has stated that

> [t]he right to parent one's children is a fundamental right. *Troxel v. Granville* (2000), 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49; *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680.  However, government has broad authority to intervene to protect children from abuse and neglect.  R.C. 2151.01.  When the state intervenes to protect a child's health or safety, "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called 'reasonable efforts.'  "Will L. Crossley, Defining Reasonable Efforts:  Demystifying the State's Burden Under Federal Child Protection Legislation (2003), 12 B.U.Pub.Int.L.J. 259, 260.

*In re C.F.*, 2007-Ohio-1104, ¶ 28-29.

{¶ 24} R.C. 2151.419 requires the juvenile court to determine whether the agency that filed the complaint has made reasonable efforts to prevent the child's removal or return the child safely home. "This court and the Supreme Court of Ohio have held that R.C. 2151.419 does not apply to motions for permanent custody made under R.C. 2151.413, among other provisions." *In re T.M.*, 2025-Ohio-843, ¶ 16 (8th Dist.). In the instant matter, the agency filed its motion for permanent custody pursuant to R.C. 2151.413.

{¶ 25} Mother concedes that this district's precedent does not require findings of fact under R.C. 2151.419 in the context of a permanent-custody hearing but contends this court has misinterpreted the statute. Mother's appellate counsel has previously raised this same argument before this court. *See In re T.M.*; *In re N.M.*, 2025-Ohio-2689, ¶ 16 (8th Dist.); *In re B.B.C.*, 2024-Ohio-588, ¶ 34-40 (8th Dist.); *In re B.P.*, 2023-Ohio-1377, ¶ 18-22 (8th Dist.); *In re I.A.-W.,* 2022-Ohio-1766, ¶ 14-21 (8th Dist.); *In re D.P.,* 2022-Ohio-135, ¶ 22-29 (8th Dist.); *In re J.J.,* 2021-Ohio-2594, ¶ 32-34 (8th Dist.); *In re Z.R.,* 2021-Ohio-1494, ¶ 15-19 (8th Dist.); *In re J.H.,* 2017-Ohio-1564, ¶ 10-26 (8th Dist.); *In re L.D.,* 2017-Ohio-1037, ¶ 18-26, (8th Dist.). This court has consistently found the argument lacks merit and declined to require findings that reasonable efforts were made to prevent removal or return of a child safely home pursuant to R.C. 2151.419, and we continue to do so here.

{¶ 26} Nonetheless, the record demonstrates that the juvenile court made reasonable-efforts findings and the agency made reasonable efforts pursuant to R.C. 2151.419. The juvenile court affirmatively found that the agency made reasonable

efforts in accordance with R.C. 2151.419 during the pendency of the case. *See* Journal Entries dated Feb. 20, 2024; July 15, 2024; and Mar. 5, 2025. In the juvenile court's decision granting permanent custody to the agency, the court again made a reasonable-efforts finding. *See* Journal Entry, July 3, 2025. Further, Mother never challenged the reasonable-efforts findings during the pendency of the case.

{¶ 27} The record also demonstrates that Mother had an existing case plan when the court granted temporary emergency custody of E.W. to the agency and the agency added E.W. to the case plan. The agency exhibited reasonable efforts when it referred Mother for parenting, mental-health, and substance-abuse services as well as housing assistance. Mother's incarceration, which began one month after the agency was granted temporary-emergency custody, was an obstacle to both the agency's assistance with these services and Mother's completion of the services in the community.

{¶ 28} "The issue in a reasonable-efforts determination is not whether the agency could have done more, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case." *In re A.F.*, 2021-Ohio-4519, ¶ 35, citing *In re D.H.*, 2021-Ohio-3984, ¶ 58 (5th Dist.), citing *In the Matter of J.H.*, 2019-Ohio-5184 (5th Dist.). We find under the circumstances presented in this case, the agency made reasonable efforts toward family reunification.

{¶ 29} Accordingly, the first assignment of error is overruled.

**B. Permanent Custody**

{¶ 30} In her second assignment of error, Mother argues that the juvenile court's grant of permanent custody of E.W. to the agency was against the manifest weight of the evidence. Specifically, Mother argues the juvenile court's conclusions that R.C. 2151.414(E)(1) and (2) established E.W. should not or could not be placed with Mother was against the manifest weight of the evidence.[3] Mother also contends the agency failed to present any evidence at trial demonstrating permanent custody to the agency was in the best interests of the child.

**1. Standard of Review**

{¶ 31} A parent has a fundamental interest in the care and custody of her child. *In re L.W.*, 2019-Ohio-1343, ¶ 20 (8th Dist.). However, parental rights are not absolute: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). "By terminating parental rights, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re R.G.*, 2016-Ohio-7897, ¶ 21 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.), citing *In re Howard*, 1986 Ohio App. LEXIS 7860, *5 (5th Dist. Aug. 1, 1986).

---

[3] Mother erroneously argues the juvenile court relied on R.C. 2151.414(E)(2) when it found E.W. could not or should not be placed with Mother within a reasonable time. The juvenile court found the R.C. 2151.414(E)(1), (10), (11), and (16) factors were applicable in this matter.

{¶ 32} "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.), citing *In re A.S.*, 2012-Ohio-4893, ¶ 40 (11th Dist.).

{¶ 33} In reviewing a juvenile court's decision regarding permanent custody on manifest weight-of-the-evidence grounds,

> the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman,* 2012-Ohio-2179,] ¶ 20. 'In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.' *Id.* at ¶ 21. 'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.,* 2023-Ohio-4703, ¶ 14.

### 2. R.C. 2151.414 Factors

{¶ 34} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). The first prong authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a

hearing, the court determines, by clear and convincing evidence, that any of the following factors apply:

> (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents;
>
> (b) the child is abandoned;
>
> (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody;
>
> (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or
>
> (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 35} In accordance with the second prong of R.C. 2151.414, when any one of the above factors exists, the juvenile court must then analyze whether, by clear and convincing evidence, it is in the best interests of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D). "[T]he best interests of the child are paramount in any custody case[,]" and courts are to liberally interpret the statutes under R.C. Ch. 2151 "to provide for the care and protection of the child . . . ." *In re A.B.*, 2006-Ohio-4359, ¶ 32, citing R.C. 2151.01(A). Pursuant to R.C. 2151.414(D)(1), in determining the best interests of a child at a permanent-custody hearing, a juvenile court "shall consider all relevant factors, including, but not limited to," the factors listed thereunder. "There is not one element that is given

greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56.

### a. Findings Pursuant to R.C. 2151.414(B)(1)(a)-(e)

{¶ 36} In the instant case, the juvenile court addressed the first prong of the statutory test by finding that, pursuant to R.C. 2151.414(B)(1)(a), "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." To support a finding that a child cannot or should not be placed with a parent within a reasonable time, the juvenile court looks to R.C. 2151.414(E)'s 15 enumerated factors. The court in the instant case found the presence of (E)(1), (11), and (16) factors supported its decision. R.C. 2151.414(E)(11) reads as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

> (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 37} The record demonstrates that Mother's son, Ja.W., was committed to the agency's permanent custody pursuant to a journal entry issued by the juvenile court on July 11, 2024, in Cuyahoga J.C. No. AD23902856. Upon such a showing, the burden shifted to Mother "to provide clear and convincing evidence to prove that he or she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." *In re J.H.*, 2017-Ohio-940, ¶ 22 (8th Dist.). Mother was incarcerated at the time of the custody trial, and while she intended to participate in a culinary arts program upon release, she was not certain the employment and related housing would be immediately available upon her release from prison. Mother had not addressed her mental-health concerns. Mother had not demonstrated her ability to maintain sobriety, mental health, and employment in the community. Additionally, Mother had no relationship with E.W. Mother did not demonstrate her ability to provide a legally secure permanent placement or adequate care for E.W.

{¶ 38} Since a court need only find that one of the R.C. 2151.414(E) factors applies to support a finding that a child cannot or should not be placed with her parent, we need not analyze the remaining R.C. 2151.414(E) factors pertaining to Mother. *In re A.E.*, 2025-Ohio-1466, ¶ 14 (8th Dist.), citing *In re L.V.*, 2024-Ohio-5917, ¶ 53 (8th Dist.), citing *In re Ky.D.*, 2024-Ohio-3198, ¶ 36 (8th Dist.). We note that no one has been identified as E.W.'s father nor established paternity for the child and the juvenile court found Father abandoned E.W. Thus, the juvenile court

satisfied the R.C. 2151.414(B)(1) findings — the first prong of the statutory test — when it applied the (E) factors to support its conclusion that E.W. should not or could not be placed in either parent's care and custody within a reasonable time.

### b. R.C. 2151.414(D) — Best Interests of the Child

{¶ 39} Once the juvenile court found that one of the enumerated R.C. 2151.414(B)(1) factors was present, the court then moved to the second prong of the test and conducted an analysis of the child's best interests. The juvenile court had to find by clear and convincing evidence that it was in E.W.'s best interests to grant permanent custody to the agency. *In re L.W.*, 2019-Ohio-1343, at ¶ 36 (8th Dist.); R.C. 2151.414(D). The focus of a best interests determination is the child, not the parent. *In re R.G.*, 2016-Ohio-7897, at ¶ 28 (8th Dist.), citing *In re N.B.*, 2015-Ohio-314, at ¶ 59 (8th Dist.); *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist. 1994). To determine the best interests of a child, the juvenile court considers all relevant factors including, but not limited to, those listed in R.C. 2151.414(D)(1)(a)-(e).

{¶ 40} The record demonstrates that the juvenile court considered the factors enumerated in R.C. 2151.414(D)(1)(a)-(e) and found that the grant of permanent custody to the agency was in the best interests of E.W. The evidence in the record supports this finding where E.W. was removed from Mother's care four days after her birth because of Mother testing positive for PCP during her pregnancy; E.W. had a strong bond with her foster parents and no preexisting relationship with Mother; Mother's history of substance abuse, mental-health issues, and parenting concerns that had not been remedied despite Mother's

participation in case-plan services; and the removal of other children from Mother's care and custody for similar reasons. Further, the GAL recommended the court grant permanent custody, citing the fact that because of her incarceration, Mother could not demonstrate her ability to maintain sobriety in the community; Mother had shown chronic substance abuse; Mother had not addressed her mental-health issues; and Mother's employment and housing plans were tenuous.

{¶ 41} Accordingly, we cannot say the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the grant of permanent custody should be reversed. The second assignment of error is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)