JOURNAL ENTRY AND OPINION
{¶ 1} Appellant appeals the decision handed down by the Cuyahoga County Court of Common Pleas, Juvenile Division, granting permanent custody of her six children to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} The children in question were originally removed from their mother in May 2000 due to educational and medical neglect.[1] They were committed to the temporary custody of CCDCFS, and eventually a motion for permanent custody was filed. While in custody, the children disclosed numerous allegations of sexual abuse at the hands of several perpetrators. Testimony revealed that appellant's ability to protect the children from further abuse and to successfully address the children's current emotional needs through participation in counseling or other treatment was in question. Further, at the time of trial appellant was unemployed and was unable to demonstrate that she had housing available for the children. Appellant had not completed her CCDCFS case plan after nearly four years of temporary custody.
 {¶ 3} The children were adjudicated neglected and committed to the temporary custody of CCDCFS on May 15, 2000. A motion to modify temporary custody to permanent custody was filed on February 14, 2002. The case was tried on January 21 and 22, 2004. In addition, the court conducted an in camera interview of the child, J.L., on January 23, 2004. After that interview, the guardian ad litem submitted a written report to the court, and the trial court issued its journal entry granting permanent custody on February 27, 2004.
 {¶ 4} Appellant now brings her timely appeal and presents four assignments of error for our review.[2]
 Permanent Custody {¶ 5} R.C. 2151.353 states in pertinent part:
 {¶ 6} "(A) If a child is adjudicated an abused, neglected or dependent child, the court may make any of the following orders of disposition:
 {¶ 7} "* * *
 {¶ 8} "(4) Commit the child to the permanent custody of a public children services agency * * * if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot or should not be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 that the permanent commitment is in the best interest of the child."
 {¶ 9} Because the instant case was tried on a motion to modify temporary custody to permanent custody, R.C. 2151.353 did not apply; instead, the proceeding was governed by R.C.2151.414(B), which states in pertinent part:
 {¶ 10} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 11} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 12} "(b) The child is abandoned.
 {¶ 13} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 14} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 15} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 16} Once a court determines that one of the above conditions exist, it must then determine by clear and convincing evidence that permanent custody is in the best interest of the children by considering the factors listed in R.C. 2151.414(D) as well as any other relevant factors. It is important to note that when R.C. 2151.414(D) applies, the court is not required to make a determination that the child cannot or should not be returned to either parent within a reasonable time. "The court does not need to determine that the child cannot or should not be placed with either parent within a reasonable time [when] the child has been in the temporary custody of one or more public children services agencies for more than 12 of the last 22 months." In reM.H., Cuyahoga App. No. 80629 at 25, 2002-Ohio-2968; See R.C.2151.414(B); see, also, In re William S. (1996),75 Ohio St.3d 95, 99.
 {¶ 17} In the instant case, when trial commenced, the children had been in the temporary custody of CCDCFS since May 2000 — more than 12 out of the last 22 consecutive months. Therefore, the trial court is not required to make a finding that the children cannot or should not be placed with either parent before moving on to the best interest determination, pursuant to R.C. 2151.414(B)(1)(d).
 Best Interest {¶ 18} The goal of any disposition of a child is that disposition which is in the best interest of the child. In reBaby Girl Baxter (1985), 17 Ohio St.3d 229. This must be the primary and overriding concern in any child custody case. In reHigby (1992), 81 Ohio App.3d 466. A court's failure to base its decision on a consideration of the best interests of the children involved constitutes abuse of discretion. In re Adoption ofRidenour (1991), 61 Ohio St. 3d 319. The Ohio Supreme Court defined "abuse of discretion" in Blakemore v. Blakemore as follows: "The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (1983),5 Ohio St.3d 217, 219, citing Steiner v. Custer (1940), 137 Ohio St. 448;Conner v. Conner, (1959), 170 Ohio St. 85. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Inre Doe I (1990), 57 Ohio St.3d 137, citing Berk v. Matthews
(1990), 53 Ohio St.3d 161.
 {¶ 19} This court visited this issue in In Re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165. In Mayle, the court found that the trial court's decision committing the child of a minor mother to the legal custody of the foster parent for the minor mother was an abuse of discretion because that placement would not be in the best interest of the child, but would instead only preserve the parental rights of the minor mother with no regard to the child's need for a stable, permanent home. Hence, a trial court must give priority to the best interest of the child — not the parent — in reaching a decision regarding permanent custody. Id. As stated by the court in In Re Awkal, "both the best interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent. R.C. 2151.414(C) prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents." Awkal, (1994),95 Ohio App. 3d 309.
 {¶ 20} Finally, completion of a case plan does not, in and of itself, require that children be reunified with parents who have failed to remedy the conditions which led to removal in the first place. This argument, if accepted, would convert the goal of the reunification process into one of mere rigid compliance with the rules of CCDCFS rather than a process in which the parent learns to exercise her own judgment in a manner which will insure the protection and well-being of the children. In Re McCutchen
(March 8, 1991), Knox App. No. 90-CA-25 at 5.
 {¶ 21} In her first assignment of error, appellant relies on an incorrect legal standard. She asserts that, before granting permanent custody, the trial court was required to find that "reasonable case planning and diligent efforts" to achieve reunification were used by the agency. This is only required, however, when a motion to modify temporary custody to permanent custody is heard pursuant to R.C. 2151.414(B)(1)(a). As discussed above, R.C. 2151.414(B)(1)(d) is applicable to this case; therefore, the only findings the trial court was required to make in order to properly grant permanent custody were, first, that the children had been "committed to the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period" and, second, that it was in the best interest of the children that permanent custody be granted. R.C. 2151.414(B)(1)(d). To that end, the trial court found that the children had been in the custody of CCDCFS since May 2000 and that, for numerous specific reasons set forth in its journal entry, permanent custody was in the children's best interest.
 {¶ 22} Accordingly, appellant's first assignment of error lacks merit and is hereby overruled.
 {¶ 23} Appellant next argues in her second assignment of error that the testimony of witness Bonnie Greenbaum should have been disallowed because she was a "surprise" witness. At the time of trial, Ms. Greenbaum was the children's treating therapist, and had been so for approximately six months. The testimony presented by Ms. Greenbaum was limited in scope, and much of her testimony was favorable to appellant because she testified that the children stated repeatedly that they wanted to be reunited with their mother. Mother's trial counsel objected to her testimony because her name had not been included on CCDCFS' witness list, which had been provided to defense counsel prior to Ms. Greenbaum's involvement in the case, and which contained the name of the children's prior treating therapist.
 {¶ 24} Juv.R. 24(C) provides in pertinent part that "If at any time during the course of the proceedings it is brought to the attention of the court that a person has failed to comply with an order issued pursuant to this rule, the court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances." In general, it is within the trial court's discretion to determine the particular sanction to be imposed for a discovery infraction, and a reviewing court will reverse such a ruling only for an abuse of that discretion.Nakoff v. Fairview General Hosp., 75 Ohio St.3d 254,1996-Ohio-159, 662 N.E.2d 1, syllabus. Abuse of discretion is more than an error of judgment; rather, it encompasses an attitude on the part of the trial court that is "unreasonable, unconscionable, or arbitrary." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 5 Ohio B. 481, 450 N.E.2d 1140; Gill v. Gill,
Cuyahoga App. No. 81463, 2003 Ohio 180.
 {¶ 25} We find no abuse of discretion in the trial court's allowing the testimony of Ms. Greenbaum. First, while Ms. Greenbaum's name was not included on the original discovery response provided to the appellant because she was not yet the children's clinician, their therapist at the time was included. Trial counsel was undoubtedly aware that the children's treating therapist(s) would be included on CCDCFS' witness list. Further, there is no requirement that disclosures or witness lists be updated pursuant to Juv.R. 24; appellant should have repeated her request or moved for an order compelling discovery if there was a question as to whether CCDCFS had updated or changed its witness list. See In re Jeremy K (July 27, 2001), Erie App. No. E-00-051; In re Funk, Portage App. Nos. 2002-P-0035, 2002-P-0036, 2002-Ohio-4958. "Absent a motion to compel, the trial court in juvenile proceedings does not abuse its discretion in admitting evidence not previously disclosed by the state." Inre Gilbert (Sept. 28, 1987), Butler App. No. CA86-10-144.
 {¶ 26} Moreover, even if inadmissible evidence was admitted by the trial court, it must be shown that the court actually relied on that evidence in its judgment. In re Fountain (Feb. 24, 2000), Cuyahoga App. No. 76650, citing In re Sims (1983),13 Ohio App.3d 37, 41, 13 Ohio B. 40, 468 N.E.2d 111; In reM.H., Cuyahoga App. No. 80629 at 25, 2002-Ohio-2968. Further, a trial judge is presumed to be capable of disregarding improper testimony. In re Fountain, supra.
 {¶ 27} There is no indication from the court's journal entry that the trial judge relied on the testimony given by Ms. Greenbaum in making its decision; in fact, there is no reference at all in the journal entry to the children's emotional issues on which Ms. Greenbaum testified. Therefore, we find that appellant's second assignment lacks merit and is hereby overruled.
 {¶ 28} In her third assignment of error, appellant objects to Ms. Greenbaum's testimony pursuant to R.C. 2151.35(F), which states in pertinent part:
 {¶ 29} "(F) In cases regarding abused, neglected, or dependent children, the court may admit any statement of a child that the court determines to be excluded by the hearsay rule if the proponent of the statement informs the adverse party of the proponent's intention to offer the statement and of the particulars of the statement, including the name of the declarant, sufficiently in advance of the hearing to provide the party with a fair opportunity to prepare to challenge, respond to, or defend against the statement, and the court determines all of the following:
 {¶ 30} "(1) The statement has circumstantial guarantees of trustworthiness;
 {¶ 31} "(2) The statement is offered as evidence of a material fact;
 {¶ 32} "(3) The statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts;
 {¶ 33} "(4) The general purposes of the evidence rules and the interests of justice will best be served by the admission of the statement into evidence."
 {¶ 34} First, statements made for the purposes of diagnosis or treatment are exceptions to the hearsay rule and are admissible pursuant to Evid.R. 803(4). See, also, State v.Chappell (1994), 97 Ohio App.3d 515, 530; State v. Jones,
Cuyahoga App. No. 83481, 2004-Ohio-5205. Further, the Ohio Supreme court found R.C. 2151.35 to be inconsistent with Article VIII of the Ohio Rules of Evidence, and, consequently, the statute is invalid and of no force and effect. In Re Coy,67 Ohio St.3d 215, 1993-Ohio-202. Accordingly, we overrule appellant's third assignment of error.
 {¶ 35} In her fourth assignment of error, appellant claims the court's finding that her parental rights should be terminated is against the manifest weight of the evidence.
 {¶ 36} It is well established that when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80; C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 280. However, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. In re Satterwhite, Cuyahoga App. No. 77071, 2001-Ohio-4137, citing Dailey v. Dailey (1945),146 Ohio St. 93, 64 N.E.2d 246; Trickey (1952), 158 Ohio St. 9, 13. This reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore, supra. "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Awkal,
supra; Satterwhite, supra.
 {¶ 37} The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846, citing Trickey v. Trickey, supra. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. As the Supreme Court of Ohio has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21.
 {¶ 38} After a review of the record in the instant case, we cannot find that the trial court abused its discretion in granting permanent custody of these children. The trial court was required to find that the children had been in the custody of CCDCFS for at least twelve months of a consecutive twenty-two month period, and that permanent custody was in their best interest. The record reflects that the children were removed from the home in May 2000, and the permanent custody trial was held in January 2004, nearly four years later. After making this determination, the court is then required to move on to R.C.2151.414(D) to make a best interest determination:
 {¶ 39} "* * * [T]he court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 40} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 41} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 42} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 43} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 44} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 45} Testimony showed that the appellant failed to complete her CCDCFS case plan and was unable to provide for the children's basic needs at the time of trial. Moreover, the evidence showed that the children were doing well in foster care and that, while the children loved their mother, the relationship between mother and children was more "peer to peer" than parent-child. While the mother had complied with some of the requests made of her by CCDCFS during the pendency of the case, she failed to comply with the requirement that she engage in individual counseling relative to the children's disclosure of sexual abuse. The goal of this requirement was to ensure that appellant would be able to protect the children in the future from any further abuse and to assist the children in dealing with their emotional issues surrounding any past abuse. The appellant was referred to and began at least four different counseling programs, but was unable or unwilling to faithfully attend the sessions.
 {¶ 46} The evidence also showed that the children were thriving in their foster placements and that they were allowed contact with each other during the period of foster care, which would continue if permanent custody was granted. Further, the social worker testified that the appellant had difficulty controlling the children's behavior during visits and even blamed the children for being in foster care. All of the children have credibly disclosed various episodes of violence and abuse which occurred during the time they lived with their mother. When appellant had been referred to family counseling with the children to address these issues, she attended approximately fifty percent of the time, and she failed to attend individual counseling for these issues on any regular basis. Since their placement in foster care, most of the children's education performance has dramatically improved, and they are bonded with their foster caregivers, all of whom expressed willingness to provide permanent, adoptive homes for the children.
 {¶ 47} Finally, the trial court conducted an in camera interview of the oldest child, J.L., who expressed a desire to return to her mother's care or reside with a female cousin. The report of the guardian ad litem reflects that the children have been consistent in their requests to return to appellant, but that they have expressed no unhappiness with their foster placements. However, based on appellant's lack of case plan compliance and inability to provide for the children's basic needs at the time of trial, the guardian ad litem also recommended permanent custody.
 {¶ 48} A parent's right to raise his or her child is eclipsed only by the right of the child to grow up in a safe, stable home free of physical or emotional abuse or neglect. The appellant in this case, unfortunately, has not demonstrated over the nearly four years her children have been in the custody of the state that she is willing or able to provide such an environment for the children. Accordingly, we find that the trial court's grant of permanent custody is not an abuse of discretion, and the appellant's final assignment of error is therefore overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., Concurs in judgment only.
 Corrigan, A.J., Dissents (with separate dissenting opinion).
[1] The children's fathers have had little involvement in their lives and are not parties to this appeal; therefore, issues pertaining to the fathers will not be addressed.
[2] Appellant's assignments of error:
"I. The juvenile court erred in terminating Ms. [L.'s] parental rights as the juvenile court found that cgs used merely reasonable efforts."
"II. The juvenile court erred and committed prejudicial error by allowing the testimony of Ms. Greenbaum pursuant to Rule 24(c) of the Rules of Juvenile Procedure."
"III. The Juvenile Court erred by allowing the testimony of Ms. Greenbaum pursuant to R.C. 2151.35(F)."
"IV. The Juvenile Court finding that Ms. [L.'s] parental rights should be terminated is against the manifest weight of the evidence."