[Cite as *In re I.K.*, 2016-Ohio-659.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: I.K. and J.D. | : | APPEAL NO. C-150667 |
| | | TRIAL NO. F10-1099X |
| | : | |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 24, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Roxan Tarnowski*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica R. Moss*, Assistant Public Defender, Guardian Ad Litem for I.K. and J.D.,

*Erik Laursen*, for Appellant Mother,

*Roger Kirk*, for Appellant J.D.,

*Christopher Kapsal*, Guardian Ad Litem for Appellant Mother.

Please note:  this case has been removed from the accelerated calendar.

**MOCK, Judge.**

{¶1}   Appellant mother has eight children.  She has lost custody of all of them for various reasons over the years.  The two children involved in this case are her son, appellant J.D., born on December 8, 1999, and her daughter I.K., born on January 2, 2014.  Appellee Hamilton County Department of Job and Family Services ("HCJFS") became involved with J.D. because mother was not taking him to his appointments, was not attending school meetings, was not giving J.D. his medication, and was failing ensure that J.D. attended school, and because of an incident in which mother had chased J.D. with a belt into traffic.  I.K. was taken into the custody of HCJFS immediately after she was born.

{¶2}   As part of her case plan, mother was ordered to participate in parenting education, random drug screenings, drug-addiction treatment and therapy, to meet with a case worker, to comply with recommended medsomatic services, to complete a psychological evaluation, to obtain housing, to participate in family therapy with her son, and to participate in supervised visits with her children. While she did make some progress toward her goals, it was insufficient to prepare her to care for her special-needs son and newborn daughter.  After several attempts to reunite mother with J.D. and I.K., HCJFS sought permanent custody of both children.  After extensive hearings, the magistrate awarded custody of I.K. to HCJFS, but declined to do so for J.D.  On objections to that decision, the trial court adopted the decision and analysis of the magistrate as they related to I.K., but then also awarded custody of J.D. to HCJFS.  Mother and J.D. have appealed that decision.

**The Termination Decision Was Not Error**

{¶3}     In her sole assignment of error, mother argues that the decision of the trial court was contrary to the weight of the evidence.  J.D. similarly argues in one assignment of error that the trial court improperly determined that termination of mother's rights was in his best interest.  When considering these arguments, we review the evidence, consider the credibility of the witnesses, and determine whether the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.  *See State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  But "[i]n weighing the evidence, [we] must always be mindful of the presumption in favor of the finder of fact."  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21.

{¶4}     R.C. 2151.414(B), the statute governing motions for permanent custody, has been amended recently.  Therefore, we will apply the version of the statute that was in effect on the date the motion for permanent custody was filed.  *See In re C.E.1*, 1st Dist. Hamilton No. C-140674, 2015 Ohio App. LEXIS 1170 (Mar. 20, 2015).

{¶5}     Former R.C. 2151.414(B) establishes a two-part test for the juvenile court to apply when ruling on a motion for permanent custody.  *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 31.  A juvenile court may terminate parental rights and grant permanent custody of a child to a public children services agency if it finds by clear and convincing evidence that (1) permanent custody is in the best interest of the child and (2) one of the four conditions in former R.C. 2151.414(B)(1)(a)-(d) applies.  *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 48.  We will address each issue in turn.

**Best-Interest Factors**

{¶6}   In determining a child's best interest, the court must consider "all relevant factors," including (1) the child's interaction with the parents, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child, (2) the wishes of the child, as expressed by the child or a guardian ad litem, (3) the custodial history of the child, (4) the child's need for legally secure placement and whether that type of placement can be achieved without a grant of permanent custody, and (5) whether any of the factors under former R.C. 2151.414(E)(7) through (11) apply.  Former R.C. 2151.414(D)(1)(a) through (e).

{¶7}   In this case, the trial court examined each factor as it related to J.D. and found that termination of mother's parental rights was in his best interest.  J.D. had been out of mother's custody since 2010.  Mother also demonstrated that she did not understand the nature and scope of J.D.'s mental-health issues, she could not supervise or redirect his inappropriate behavior, and she was incapable of caring for his mental-health needs.

{¶8}   As for I.K., the trial court agreed with the magistrate's analysis and adopted it.  I.K. had been out of mother's custody since she had been born.  Mother was unable to provide basic care for her infant.  She attended only one of the child's medical appointments, and was so inconsistent with her visits that she was required to call ahead before her scheduled times.

{¶9}   Mother frequently failed to make use of services that were offered to her.  Her visits with both children were infrequent and inconsistent.  Family therapy could not continue because of her inconsistent involvement.  She failed to effectively address her own mental-health and substance-abuse issues.  In light of this evidence,

the trial court concluded that there was no reason to believe that mother's compliance would change.

{¶10}  Based on this record, the determination of the trial court that it was in the best interest of the children to terminate mother's parental rights was not against the weight of the evidence.

### Former R.C. 2151.414(B)(1) Findings

{¶11}  Next we consider whether the trial court properly determined that one of the four conditions in former R.C. 2151.414(B)(1) applied for each child.  The four conditions are that (a) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, (b) the child is abandoned, (c) the child is orphaned and no relatives are able to take permanent custody, or (d) the child had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period ("12 of 22") at the time the agency moved for permanent custody.  Former R.C. 2151.414(B)(1).

{¶12}  J.D. had clearly been in the custody of the agency longer than 12 months of a consecutive 22-month period.  Therefore, the trial court properly determined that former R.C. 2151.414(B)(1)(d) applied, and that decision was not against the manifest weight of the evidence.

{¶13}  Alternately, the trial court determined that I.K. could not be placed with either parent in a reasonable time.  *See* former R.C. 2151.414(B)(1)(a).  In order to reach that conclusion, the trial court had to find that one or more of the factors enumerated in former R.C. 2151.414(E)(1) through (16) existed.

{¶14}  The identity of the father was unknown.  Therefore, placement with him was not possible.  As to the mother, the trial court concluded that she had failed to remedy the problems that had initially caused the children to be placed outside the

5

home. *See* former R.C. 2151.414(E)(1). Mother lacked the ability to provide basic care, and failed to effectively participate in programs designed to remedy those deficiencies. I.K. had been in a foster home since her birth. And mother had not effectively addressed her own mental-health and substance-abuse issues. While mother had made some progress, even substantial completion of a case plan does not, in and of itself, require that children be reunified with parents who have failed to remedy the conditions which led to removal in the first place. *In re J.L.*, 8th Dist. Cuyahoga No. 84368, 2004-Ohio-6024, ¶ 20.

{¶15} The determination that former R.C. 2151.414(E)(1) applied was supported by the record. And since the trial court properly determined that mother had failed to remedy the problems that had initially caused the children to be placed outside the home, it properly determined that I.K. could not be placed with either parent in a reasonable time pursuant to former R.C. 2151.414(B)(1)(a). This determination as not against the manifest weight of the evidence.

### Conclusion

{¶16} Upon our review of the record, we hold that the court's findings as to the best-interest factors and the former R.C. 2151.414(B)(1) factors were not against the manifest weight of the evidence. Therefore, the assignments of error of mother and J.D. are overruled. We affirm the judgment of the trial court.

Judgment affirmed.

**DEWINE, P.J.**, and **STAUTBERG, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.