[Cite as *In re C.K.*, 2026-Ohio-357.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE C.K., ET AL.                                   :

Minor Children                                        :                 No. 115324

[Appeal by M.K., Father]                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 5, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD23907071, AD23907072, and AD24906236

---

### *Appearances:*

Gregory T. Stralka, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* Cuyahoga County Division of Children and Family Services.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant M.K. ("father") appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that awarded permanent custody of three of his minor children to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") and terminated all

parental rights. After a careful review of the record, we affirm the juvenile court's decision.

{¶ 2} Father and A.K. ("mother") are the biological parents of the three minor children involved in this matter. In June 2023, CCDCFS filed a complaint for neglect, dependency, and temporary custody of two of the children, who were born earlier that year. In September 2023, those two children were adjudicated to be neglected and dependent and were committed to the temporary custody of the agency, due in part to mother's mental-health issues and father's minimization of mother's mental health. Case-plan services were provided, and temporary custody was extended.

{¶ 3} Another complaint for neglect, dependency, and temporary custody was filed in June 2024 with respect to the third child involved herein, who was born earlier that year. In August 2024, that child was adjudicated to be dependent and was committed to the temporary custody of the agency.

{¶ 4} In November 2024, CCDCFS filed a motion to modify temporary custody to permanent custody in each child's case. A hearing was held on the motion in June 2025. The juvenile court heard testimony from multiple witnesses and accepted evidence in the matter. In July 2025, the juvenile court journalized a judgment entry in each child's case, wherein the juvenile court made the requisite statutory findings, granted CCDCFS's motion to modify temporary custody to

permanent custody, committed the child to the permanent custody of the agency, and terminated all parental rights. Father timely appealed.[1]

{¶ 5} Father raises two assignments of error, under which he claims the juvenile court's permanent-custody decisions are not supported by sufficient evidence and are against the manifest weight of the evidence. At the outset, we recognize that there is no question that father loves his children, and that has never been in question. We also commend father for the steps he has taken towards the goal of reunification with his children. Nonetheless, under Ohio law, courts are charged with protecting the best interest of each child, which is where our focus remains.

{¶ 6} Although it is well established that the right to parent one's child is a fundamental right, the government has broad authority to intervene to protect a child's health or safety. *In re C.F.*, 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000); R.C. 2151.01. Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 2014-Ohio-4558, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). To that end, courts are to liberally interpret the statutes under R.C. Ch. 2151 "to provide for the care and protection of the child . . . ." *In re A.B.*, 2006-Ohio-4359, ¶ 32, citing R.C. 2151.01(A).

---

[1] Mother did not appeal the trial court's judgments.

{¶ 7} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.,* 2023-Ohio-4703, ¶ 7, quoting R.C. 2151.414(B)(1). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.,* quoting *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 8} In reviewing the sufficiency challenge herein, we must examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *See id.* at ¶ 12, citing *Cross* at 477. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 14, citing *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 20.

{¶ 9} In each child's case herein, the juvenile court found by clear and convincing evidence that the factor under R.C. 2151.414(B)(1)(a) applies and that

"the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." Pertinent thereto, the juvenile court found multiple factors under R.C. 2151.414(E) were met. The juvenile court found the factor under R.C. 2151.414(E)(2) was applicable only to mother, who suffers from chronic mental illness. Additionally, the juvenile court found applicable to both parents the factors under R.C. 2151.414(E)(1), for failing continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home, and R.C. 2151.414(E)(16), for any other relevant factor, including the following:

> The Mother has had one child committed to legal custody of [that child's] father in AD 19901785. The Mother and Father [herein] had another child committed to the legal custody of a relative in AD19907741. The Mother has chronic serious mental health concerns including hallucinations even while medication compliant. The father testified stress, etc. can contribute to the hallucinations and mental health challenges of Mother. The parents are married and continue to reside together. The Father minimizes mother's mental health challenges and barriers to providing care for their children. The parents love their children but would be unable to provide a safe and secure and permanent home for their children.

{¶ 10} In determining the best interest of each child, the juvenile court considered all relevant best-interest factors, including the factors listed under R.C. 2151.414(D)(1)(a)-(e), which are specifically set forth in the juvenile court's decisions. "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. The juvenile court recognized "[t]he child's guardian ad litem recommended that the child be

committed to the permanent custody of [CCDCFS]." Ultimately, in each child's case, the juvenile court granted CCDCFS permanent custody of the child.

{¶ 11} Under his sufficiency challenge, father claims the trial court's findings are devoid of any factual support. However, that is simply not the case. The trial court made specific factual findings under R.C. 2151.414(E) and specified which were applicable to both mother and father.[2] Also, "a court need only find that one of the R.C. 2151.414(E) factors applies to support a finding that a child cannot or should not be placed with her parent[.]" *In re E.W.*, 2025-Ohio-5052, ¶ 38 (8th Dist.). Further, as held by the Supreme Court of Ohio, "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 2020-Ohio-5102, ¶ 31. Though the best practice is for the juvenile court to specifically address each factor, *see id.* at ¶ 32, in this matter, we are able to discern from the trial court's judgment entries and statements on the record that the trial court engaged in the appropriate analysis and considered the applicable statutory factors.

{¶ 12} Nonetheless, father contends sufficient evidence was not presented by CCDCFS to show that he "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." Father also argues that there was insufficient evidence to establish how he put the

---

[2] This case is distinguishable from *In re A.T.*, 2021-Ohio-4306 (8th Dist.), which is cited by father.

children at risk or otherwise neglected them. Father states that he engaged in case-plan services, completed parenting and domestic-violence programs and a psychological assessment, and was engaged in a program to assist people residing with family members who have mental illness. However, a parent's successful completion of a case plan does not preclude a grant of permanent custody to a social-services agency. *See In re C.C.*, 2010-Ohio-780, ¶ 25 (8th Dist.), citing *In re J.L.*, 2004-Ohio-6024 (8th Dist.).

{¶ 13} Though father refers to testimony and evidence favorable to him, such as his ability to calm situations with mother, and he points to certain deficiencies in the record, such as the psychological evaluation of him being conducted prior to completing services, there was other testimony and evidence provided. The record shows that prior to the complaints that were filed in this matter, father and mother had another child who had been adjudicated dependent and committed to the legal custody of a relative. There was testimony that mother has issues with her mental health and anger management, she suffers from hallucinations, and she periodically requires hospitalization. According to the testimony from the case worker, mother and father live together, the parents expressed being a team, and father understood mother could not manage the children without him. There were concerns with father minimizing situations involving mother's behaviors. For instance, there was an incident where mother was upset with a situation involving a former case worker and spit at the case worker, and father's reaction was that the case worker should not have made mother mad.

After visitation could no longer occur at the library, supervised visitation continued in a controlled environment and the parents needed the assistance of the case worker to manage all three children. Despite being afforded four hours for visitation, the parents decided on two-hour visitations, though the location had its issues.

{¶ 14} The record also shows that the children are doing well in secure placements with relatives and are well-bonded with their respective caretakers. The children were referred to Help Me Grow, and one of the children has special needs that require a lot of attention. Father had not attended medical appointments and had not received any professional direction about the child's special needs. There was concern with father always being supportive of mother, which could be to the detriment of the children, and concern with father's ability to protect the children if mother were having a mental-health episode. Although the parents have an appropriate home and father was employed at the time of trial, the case worker testified that she did not believe the parents could provide a safe, stable, and permanent home for the children.

{¶ 15} The guardian ad litem ("GAL") for the children recommended permanent custody to CCDCFS. As expressed by the GAL, father is "very supportive" of mother, who still has "uncontrollable outbursts" and hallucinations, and the children are "at a lot of risk" in that type of an environment. The GAL noted significant concerns in her report, including that father cannot control mother when

she is unmedicated, which presents a safety issue for the children. The GAL also noted that father minimizes mother's mental-health issues.

{¶ 16} Other testimony was provided that supports the trial court's determinations. Though father requested a continuance to afford him additional time, at the time of trial, two of the children had been in the custody of CCDCFS for approximately two years, and the third child had been in the custody of CCDCFS for one year. The record shows the children needed a safe, stable, and permanent home environment. Despite father's arguments otherwise, we find there is sufficient evidence supporting the juvenile court's permanent-custody determinations by clear and convincing evidence.

{¶ 17} Under his manifest-weight-of-the-evidence challenge, father again refers to his completion of case-plan services and to the day-care plan he articulated for reunification. The trial court heard the testimony that father engaged in case-plan services, he has an appropriate home for the children, he is employed, he has consistent visitation with the children, he does a good job regulating everyone's emotions during visitation, and he articulated a plan for the care of the children that would not involve leaving them alone with mother should reunification occur. However, the juvenile court weighed all relevant factors in rendering its decision. Upon our review of the record, we find the juvenile court acted in accordance with the best interest and ultimate welfare of the children. After carefully reviewing the entire record, we do not find this to be the exceptional case in which the juvenile court clearly lost its way or committed a manifest miscarriage of justice by

terminating the parents' parental rights and awarding permanent custody of the children to CCDCFS. We are not persuaded by father's arguments otherwise. We conclude that the juvenile court's judgment is not against the manifest weight of the evidence.

{¶ 18} Father's assignments of error are overruled.

{¶ 19} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR