[Cite as *In re P.S*, 2026-Ohio-1785.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF:<br><br>P.S.<br>B.S.<br>R.S.<br>H.S.<br>W.S.<br><br>MINOR CHILDREN | Case Nos. 2025CA00172<br>2025CA00173<br>2025CA00174<br>2025CA00175<br>2025CA00176<br><br>Opinion And Judgment Entry<br><br>Appeal from the Stark County Court of Common Pleas, Family Court Division, Case Nos. 2023JCV1476, 2023JCV1477, 2023JCV1478, 2023JCV1479, 2023JCV1480<br><br>Judgment:  Affirmed<br><br>Date of Judgment Entry: May 14, 2026 |

BEFORE:   Craig R. Baldwin, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Brandon Waltenbaugh, for Plaintiff-Appellee; Jeffrey R. Jakmides, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}   Appellant-Father, B.S., ("Father")[1] appeals the December 8, 2025, Judgment Entry of the Court of Common Pleas for Stark County, Ohio, Family Court Division, terminating his parental rights and granting permanent custody of his five

---

[1] Mother of the children is not a party to this appeal.

minor children to appellee, Stark County Jobs and Family Services ("SCJFS"). For the reasons below, we affirm.

**Initiation of the Case**

{¶2} On December 27, 2023, SCJFS filed a complaint alleging that P.S. (born July 1, 2015)[2], B.S. (born November 21, 2016)[3], R.S. (born March 7, 2018)[4], H.S. (born August 5, 2021)[5], and W.S. (born December 1, 2022)[6] were dependent and neglected. On December 28, 2023, a shelter care hearing was held. Both parents appeared and, after consultation with counsel, stipulated to probable cause. The trial court granted temporary custody to SCJFS and scheduled further proceedings.

{¶3} On January 17, 2024, the original case plan was filed and approved. The matter proceeded to adjudication on March 21, 2024. At that hearing, SCJFS moved to dismiss the neglect allegations, which the trial court granted. Both parents stipulated to dependency, and the trial court adjudicated the children dependent. The court found that although the parents had begun case plan services, significant concerns remained regarding the condition of the family home. Temporary custody with SCJFS was continued.

**Case Plan Progress and Review Hearings**

{¶4} On June 13, 2024, the lower court conducted a dispositional review hearing and approved an amended case plan. The evidence established that the children were placed in multiple foster or kinship homes and were doing well. The court found that the

---

[2] 2025CA00172/2023 JVC 01476.
[3] 2025CA00173/2023 JVC 01477
[4] 2025CA00174/2023 JVC 01478
[5] 2025CA00175/2023 JVC 01479
[6] 2025CA00176/2023 JVC 01480

parents needed to maintain a sanitary and safe home environment and complete recommended services, including counseling and parenting programs.

{¶5} On November 19, 2024, the lower court granted SCJFS's motion to extend temporary custody. On May 15, 2025, a second extension was granted following another review hearing at which both parents appeared and stipulated to the extension. The court again ordered the status quo.

{¶6} On October 22, 2025, the lower court conducted an additional review hearing. Although the parents had engaged in some services, the court found that substantial concerns remained and that there were no compelling reasons to preclude SCJFS from seeking permanent custody.

**Permanent Custody Proceedings**

{¶7} On September 11, 2025, SCJFS filed its motion for permanent custody, and the hearing was conducted on November 25, 2025.

{¶8} SCJFS caseworker Lisa Eggenschwiler testified that the family had a lengthy agency history involving deplorable home conditions, excessive discipline, and exposure of the children to unsafe individuals. She described the home as unsanitary and unsafe, including conditions involving animal feces, insects, clutter, and lack of adequate heat. The children were also observed to be unclean and in poor condition at the time of removal.

{¶9} Eggenschwiler testified that Father failed to accept responsibility for the conditions leading to removal and instead blamed the children. Although Father made some improvements to the home, including installing a furnace and replacing flooring, he did not remediate the underlying concerns.

{¶10} Eggenschwiler testified that Father's case plan required completion of a parenting and mental health assessment through Lighthouse Family Center. The resulting recommendations included comprehensive mental health treatment, medication management, parenting education, and marital counseling. Eggenschwiler testified Father was initially resistant to treatment and was terminated from services due to poor attendance. Eggenschwiler testified that although Father later reengaged in counseling, his compliance remained inconsistent.

{¶11} Eggenschwiler testified Father also failed to complete the Goodwill Parenting Program, as he was terminated after multiple unexcused absences. Testimony from the program instructor established that Father did not demonstrate improvement in parenting skills and struggled to manage the children during supervised visitation. Visits were frequently chaotic, and Father failed to appropriately respond to the children's behavioral needs.

{¶12} Dr. Aimee Thomas, a psychologist with Lighthouse Family Counseling Center, testified as an expert witness. Dr. Thomas testified that she met with Father for his evaluation on February 20, 2024, March 13, 2024, and April 3, 2024. (Tr. at 53). Dr. Thomas testified that she diagnosed Father with major depressive disorder, re-current severe, depressive personality disorder, other specified anxiety while identifying some paranoid ideation, stubborn[ness], and some potential detachment difficulties that stem from early childhood experiences. (Tr. at 57). Dr. Thomas testified that she recommended that Father participate in comprehensive mental health treatment, including individual counseling and psychiatric services, participation in the Goodwill Parenting Program, including the Home-Based Program when reunification occurred,

that Children Services monitor the condition of the home, that Father participate in anger management if he continued to present anger issues after engaging in counseling, and marital counseling. (Tr. at 57-58).

**{¶13}** Dr. Thomas testified that she specifically recommended Goodwill parenting classes for Father because it is a more intensive program, and that the Triple "P" Parenting Program would be insufficient for his needs. (Tr. at 58-59).

### Best Interests of the Children

**{¶14}** Eggenschwiler testified that the children entered agency custody with significant unmet medical and dental needs. Several children required treatment for serious conditions, and the older children exhibited trauma-related issues requiring mental health services.

**{¶15}** Eggenschwiler testified that the children are currently placed in stable foster or kinship homes. Eggenschwiler testified R.S. is placed with a relative and wishes to remain there. Eggenschwiler testified H.S. and W.S. are placed together in a foster home. Eggenschwiler testified B.S. and P.S. are placed separately but are doing well in their respective placements. Eggenschwiler testified several placements have expressed a willingness to adopt. Eggenschwiler testified no suitable relative placements were identified due to disqualifying background concerns.

**{¶16}** Eggenschwiler testified that permanent custody is in the children's best interests and that the benefits of permanence outweigh any harm from severing parental bonds. The Guardian ad Litem likewise recommended that permanent custody be granted.

**Disposition**

{¶17} On December 8, 2025, the trial court issued detailed findings of fact and conclusions of law granting permanent custody of the children to SCJFS. The court found that the children had been in the temporary custody of SCJFS for 12 or more months of a consecutive 22-month period, that they could not or should not be placed with Father within a reasonable time despite reasonable efforts by the agency, and that permanent custody was in the children's best interests.

**Assignment of Error**

{¶18} Father raises one assignment of error for our consideration,

{¶19} "I. THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE MINOR CHILDREN AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."

**Fundamental Rights and Governing Standards**

{¶20} A parent's right to raise a child is an "essential" and "basic" civil right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972). The interest in the care, custody, and management of one's child is therefore fundamental. *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Because permanent termination of parental rights has aptly been described as "the family law equivalent of the death penalty," parents must be afforded every procedural and substantive protection the law allows. *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991). Accordingly, a juvenile court's award of permanent custody must be supported by clear and convincing evidence. R.C. 2151.414(B)(1).

**Standard of Review**

{¶21} The Ohio Supreme Court has clarified that appellate review of permanent-custody determinations under R.C. 2151.414 proceeds under the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, depending on the nature of the arguments raised. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. Father challenges both.

**Sufficiency of the Evidence**

{¶22} Sufficiency of the evidence presents a question of law, which we review de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13. Sufficiency is a test of adequacy—whether the evidence, if believed, permits the factfinder to reach the challenged conclusion as a matter of law. *In re Z.C.* at ¶ 13, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶23} Where, as here, the governing burden of proof is clear and convincing evidence, the reviewing court examines the record to determine whether the juvenile court had before it sufficient evidence from which it could form a firm belief or conviction that the statutory requirements for permanent custody were met. *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104 (1986); *In re Z.C.* at ¶¶ 7-8; *In re L.A.*, 2024-Ohio-3436, ¶ 59 (5th Dist.).

**Manifest Weight of the Evidence**

{¶24} Manifest-weight review concerns the persuasive effect of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. In conducting this review, we consider whether the trier of fact clearly lost its way in resolving evidentiary conflicts, resulting in a manifest miscarriage of justice—even where the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 386-387.

{¶25} Although an appellate court may act as a "thirteenth juror," we afford substantial deference to the trial court's credibility determinations, given its superior position to observe the witnesses. *Eastley* at ¶ 21; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). A manifest-weight challenge succeeds only in the exceptional case where the evidence weighs heavily against the judgment. *Thompkins* at 387.

**Statutory Framework for Permanent Custody**

{¶26} R.C. 2151.414 establishes a two-pronged inquiry for permanent custody. The juvenile court must find, by clear and convincing evidence, (1) that one of the circumstances set forth in R.C. 2151.414(B)(1)(a) - (e) applies, and (2) that granting permanent custody is in the child's best interest.

{¶27} Here, the lower court found that R.C. 2151.414(B)(1)(d) applied to the children, and further determined, in the alternative, that R.C. 2151.414(B)(1)(a) was satisfied for the children. Either finding—when coupled with a best-interest determination—is independently sufficient to support an award of permanent custody. *In re Dalton*, 2007-Ohio-5805 (5th Dist.); *In re K.C.*, 2024-Ohio-2081, ¶ 45 (10th Dist.).

**Temporary Custody for Twelve of Twenty-Two Months**
**R.C. 2151.414(B)(1)(d)**

{¶28} With respect to the children the lower court expressly found that the children had been in the temporary custody of SCJFS for more than twelve months of a consecutive twenty-two-month period at the time the agency filed its motion for permanent custody.

{¶29} The "12-of-22" provision reflects the legislature's deliberate balance between reunification efforts and the child's need for timely permanence. *In re C.W.*,

2004-Ohio-6411, ¶ 22. Once the statutory time has elapsed, the focus properly shifts from parental opportunity for reunification to the child's need for stability. *Id.* at syllabus.

{¶30} Father does not challenge the lower court's twelve-of-twenty-two-month finding with respect to the children. Accordingly, this finding alone - when coupled with a best-interest determination - supports the award of permanent custody for the children, and our analysis could properly end there. *In re Calhoun*, 2008-Ohio-5458 (5th Dist.); *In re: K.C.,* 2024-Ohio-2081, ¶45 (10th Dist.).

### Placement with Father Within a Reasonable Time
### R.C. 2151.414(B)(1)(a)

{¶31} Nevertheless, the lower court also determined that the children cannot be placed with Father within a reasonable time or should not be placed with him, pursuant to R.C. 2151.414(B)(1)(a). That determination is likewise supported by clear and convincing evidence.

{¶32} Under R.C. 2151.414(E), if the court finds that any one of the enumerated factors exists as to a parent, it must conclude that the child cannot or should not be placed with that parent within a reasonable time. *In re William S.*, 75 Ohio St.3d 95 (1996).

{¶33} Here, the record amply supports the court's findings under R.C. 2151.414(E)(1) and (2). Lisa Eggenschwiler, the agency caseworker, testified that the case began due to severe concerns about the home, including no heat, bugs, animal feces, clutter, and the children appearing dirty. She explained that the agency had prior involvement with the family and that both parents were given case plan services but failed to make sufficient progress. She testified that the mother was inconsistent with counseling and did not successfully complete parenting classes, while the father struggled

with anger issues, was inconsistent with treatment, and was terminated from parenting classes due to absences. Eggenschwiler described visits as chaotic, with poor supervision and limited engagement from both parents, often involving yelling and difficulty managing the children. She also testified that the mother exposed the children to unsafe individuals and that the father denied responsibility and blamed the children. Although some improvements were made to the home, she stated that concerns remained, particularly outside the home. She ultimately concluded that neither parent remedied the core issues, and that permanent custody was in the children's best interest.

{¶34} Dr. Aimee Thomas, a psychologist who conducted parenting assessments, testified that Father suffers from severe mental health conditions, including major depressive disorder and personality-related issues, and described him as pessimistic and prone to self-pity. She testified that he requires both therapy and medication, as well as parenting education and possibly anger management. Dr. Thomas also noted that Father's completion of an online parenting course was a positive step but insufficient to address his needs. Overall, she indicated that both parents required significant improvement, with the Father presenting more serious concerns.

{¶35} Amy Humrighouse, a parenting instructor at Goodwill, testified that Father failed to complete the program due to excessive absences, even after signing an attendance agreement. She described his visits as increasingly chaotic, marked by yelling, profanity, and anger, and stated that he did not meet program goals or demonstrate improvement. Overall, she concluded that neither parent benefited from the program.

{¶36} The lower court found, and the evidence confirms, that Father consistently refused to engage in mental-health treatment and rejected services designed to address

his parenting skills. The case worker testified that Father was frequently hostile, verbally abusive, threatening and uncooperative.

{¶37} Although the home was improved, and Father attempted to engage in mental health counseling, completion—or partial completion—of a case plan does not itself preclude permanent custody. A case plan is a means to an end, not the end itself. *In re J.L.*, 2004-Ohio-6024, ¶ 20 (8th Dist.). Where, as here, the problems that precipitated removal persist despite services, the court does not err in finding that reunification is not reasonably achievable. *In re Summerfield*, 2005-Ohio-5523 (5th Dist.); *In re K.C.*, 2024-Ohio-2081, ¶ 56 (10th Dist.).

{¶38} Although the record reflects that Father loves his children, love alone does not overcome years of noncompliance, instability, and unmet needs. The evidence supports the lower court's conclusion that Father has made virtually no sustained progress since SCJFS's initial involvement, and that additional time would not alter that reality.

{¶39} Accordingly, we conclude that competent, credible evidence supports the lower court's finding that the children cannot be placed with Father within a reasonable time or should not be placed with him.

### Best Interests of the Children
### R.C. 2151.414(D)

{¶40} When determining whether permanent custody is in a child's best interest, a juvenile court must consider all relevant factors, including those set forth in R.C. 2151.414(D)(1). No single factor is dispositive; rather, the court must weigh the totality of the circumstances. *In re Schaefer*, 2006-Ohio-5513, ¶ 56.

**{¶41}** A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 2000 Ohio App.LEXIS 5261 (5th Dist. Nov. 13, 2000), *citing In re Awkal,* 95 Ohio App.3d 309, 316 (8th Dist. 1994).

### Interaction and Interrelationship

### R.C. 2151.414(D)(1)(a)

**{¶42}** The evidence demonstrated that the children's interactions with Father were generally good, and the children are bonded with Father. The evidence also established that the mother exposed the children to unsafe individuals and that Father denied responsibility and blamed the children for the problems leading to their removal from the home.

**{¶43}** Eggenschwiler testified that the children entered agency custody with significant unmet medical and dental needs. Several children required treatment for serious conditions, and the older children exhibited trauma-related issues requiring mental health services. Eggenschwiler testified that the children have been in the temporary custody of the SCJFS for almost two years.

### Wishes of the Children R.C. 2151.414(D)(1)(b) and Custodial History

### R.C. 2151.414(D)(1)(c)

**{¶44}** Eggenschwiler testified that the children are bonded and/or fine with their current placements. (Tr. at 110-112). Eggenschwiler testified that P.S. desires to return

home and has throughout the entire case. (*Id.* at 113). Eggenschwiler testified that B.S. desires to return home. (*Id.*). Eggenschwiler testified that R.S. wishes to remain in her current placement. (*Id.* at 114).

{¶45} Eggenschwiler testified H.S. and W.S. are placed together in a foster home. (Tr. at 110 -112). They have been placed there for almost two years. Eggenschwiler testified that everyone in the home is bonded to each other. (Tr. at 110). Eggenschwiler testified the kinship provider is willing to adopt H.S. and W.S.

{¶46} Eggenschwiler testified that permanent custody is in the children's best interests and that the benefits of permanence outweigh any harm from severing parental bonds. The Guardian ad Litem likewise recommended that permanent custody be granted.

### Need for a Legally Secure Permanent Placement
### R.C. 2151.414(D)(1)(d)

{¶47} The children has been subject to agency involvement for nearly two years at the time the motion for permanent custody was filed. Despite years of intervention, services, and repeated opportunities to remedy the conditions leading to removal, the Father failed to achieve or maintain a safe, stable, and sanitary home or to meet the children's medical and developmental needs. The length and continuity of this custodial history weigh heavily in favor of permanency.

{¶48} The record overwhelmingly establishes that the children require a legally secure placement that can provide long-term stability and address their needs. Father has not demonstrated the ability or willingness to provide such an environment.

**Additional Relevant Factors**

**R.C. 2151.414(D)(1)(e)**

{¶49} The court also considered the Father's demonstrated lack of commitment, as evidenced by repeated refusals to engage in services, hostile interactions with providers, and failure to prioritize the children's basic needs. Despite extensive assistance from SCJFS, Father made no meaningful progress toward reunification.

**Conclusion**

{¶50} Considering the totality of the evidence and each factor under R.C. 2151.414(D), the record clearly supports the lower court's determination that granting permanent custody to SCJFS was in the children's best interests. The children's need for safety, stability, and care—needs that were met only after removal—outweigh Father's expressed desire to maintain parental rights.

{¶51} We find that the lower court correctly found that the children had been in the temporary custody of SCJFS for over twelve months of a consecutive 22-month period.

{¶52} We further find the court's determination that Father had failed to remedy the issues that caused the initial removal, and, therefore, the children could not be placed with him within a reasonable time, or should not be placed with him, was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶53} We further find that the lower court's decision that granting permanent custody to SCJFS was in the children's best interests was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶54} Because the evidence in the record supports the lower court's judgment, we overrule Appellant-Father's assignment of error and affirm the decisions of the Court of Common Pleas for Stark County, Ohio, Family Court Division in Case Number 2023 JVC 01476, Case Number 2023 JVC 01477, Case Number 2023 JVC 01478,  Case Number 2023 JVC 01479 and Case Number 2023 JVC 01480.

{¶55} For the reasons stated in our Opinion, the judgments of the Court of Common Pleas for Stark County, Ohio, Family Court Division in Case Number 2023 JVC 01476, Case Number 2023 JVC 01477, Case Number 2023 JVC 01478, Case Number 2023 JVC 01479 and Case Number 2023 JVC 01480 are affirmed.  Costs to be paid by Appellant- Father B.S.

By: Popham, J.

Baldwin, P.J. and

Gormley, J., concur